[Nos. 2046–2; 2050–2.   Division Two.   May 6, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. FRANK E. JOHNSTON, *Appellant.*

*David V. Johnson,* for appellant.

*Craig Ritchie, Prosecuting Attorney,* and *C. T. Walrath, Deputy,* for respondent.

REED, J.—This appeal involves the consolidation of two causes. In 2046–2, defendant Frank Eugene Johnston appeals from the enhancement of his sentence in a habitual criminal proceeding under RCW 9.92.090, and in 2050–2 he appeals from his convictions of attempted escape and grand larceny of a motor vehicle. In 2046–2 Johnston alleges (1) that his sentence was improperly enhanced because his plea of guilty was entered without his knowledge of the possibility that he could receive a mandatory minimum sentence of 15 years under the habitual criminal statute, (2) that a California felony conviction was improperly used as a basis for the habitual criminal finding, and (3) that our habitual criminal statutes are unconstitutional. In 2050–2, he contends the trial court erred when it denied his motion for a new trial on the ground that the sheriff failed to subpoena a defense witness. We affirm both judgments and convictions.

The following facts are pertinent to our review. Defendant was initially charged in Clallam County (Cause No. 2046–2) with grand larceny and second–degree burglary. Two days later, on February 28, 1975, defendant pleaded guilty to one count of grand larceny, and the second–degree burglary charge was dismissed. At that time Johnston signed a "Statement of Defendant on Plea of Guilty Pursuant to Rule 4.2(g)." The statement recited defendant had been informed that grand larceny carries with it a maximum term of imprisonment of 15 years and no mandatory minimum term; additionally the written plea contained the prosecutor's recommendation that sentence be deferred and that defendant receive "90 days work release with 60 days suspended depending on rap sheet." The sentencing judge

continued the proceeding until a presentence report could be prepared.

At the time of defendant's preliminary appearance and in connection with his request for pretrial release, the trial court inquired regarding any previous convictions. Defendant responded that he had been convicted in Oklahoma in 1966 for unauthorized use of a motor vehicle, but had later been pardoned by the Governor. When asked if he had any other convictions he responded in the negative.[1]

On March 19, 1975, while awaiting sentence on his guilty plea, defendant was arrested on a fugitive warrant from the State of California. This prompted him to steal an automobile and flee from custody; he was recaptured and two more charges were filed against him (Cause No. 2050–2), one for attempted escape and the other for grand larceny of a motor vehicle. On April 11, 1975, the Clallam County Prosecutor filed a supplemental information to the original grand larceny charge seeking to have Johnston adjudged a habitual criminal and his punishment enhanced pursuant to RCW 9.95.040. The supplemental information specified a 1969 California aggravated assault conviction and the Oklahoma conviction as the two prior felonies necessary to support the charge. Johnston's motion to withdraw his guilty plea and his motion to dismiss were both denied, and a jury found him to be a habitual criminal. The court, pursuant to RCW 9.92.090,[2] sentenced him to life imprisonment on his plea of guilty to the grand larceny charge (Cause No. 2046–2).

---

[1]Defendant now maintains he did not reveal his 1969 California assault conviction because another California court had held the conviction invalid. We will address this matter further in our discussion of defendant's challenge to the validity of his habitual criminal status, based in part on that conviction.

[2]RCW 9.92.090 provides in relevant part:

"Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who shall previously have been twice convicted, whether in this state or elsewhere, of any crime which under the laws of this state would amount to a felony, or who shall previously have been four times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to

Under RCW 9.95.040(3),[3] the effect of the habitual criminal finding was to impose on Johnston a mandatory minimum sentence of 15 years. Defendant was also found guilty of both counts in Cause No. 2050-2, and received sentences of 10 years for escape and 15 years for grand larceny of the automobile, the terms to run concurrently.

On appeal defendant first argues he was denied due process of law and that his plea was obtained by the State in violation of CrR 4.2, because he was not advised that by pleading guilty he was subjecting himself to a possible mandatory minimum sentence of 15 years. Defendant relies on a recent line of cases involving the enhanced penalty provisions of RCW 9.41.025 (committing crimes when armed with a firearm), and RCW 9.95.040(1) (committing crimes when armed with a deadly weapon), which hold "that a mandatory minimum term is a direct consequence of a guilty plea of which the accused must be informed prior to entering his plea." *Wood v. Morris,* 87 Wn.2d 501, 513, 554 P.2d 1032 (1976); *Miller v. Morris,* 10 Wn. App. 694, 519 P.2d 1314 (1974); *see also* Comment, *Washington Proposed Rules of Criminal Procedure* 49 (1971). Stating the same proposition somewhat differently, the court in *State v. Cosner,* 85 Wn.2d 45, 530 P.2d 317 (1975), held due process of law requires that the accused person be put on notice of the enhanced consequences that will accompany his conviction. *See also State v. Frazier,* 81 Wn.2d 628, 503 P.2d 1073 (1972); *State v. Nass,* 76 Wn.2d 368, 456 P.2d 347 (1969); *State v. Stamm,* 16 Wn. App. 603, 559 P.2d 1 (1976); *State v. Smith,* 11 Wn. App. 216, 521 P.2d 1197 (1974); these decisions mandate that a defendant be given notice, at the time he is charged with certain aggravated

defraud is an element, shall be punished by imprisonment in the state penitentiary for life."

[3]RCW 9.95.040(3) provides:
"For a person convicted of being an habitual criminal within the meaning of the statute which provides for mandatory life imprisonment for such habitual criminals, the duration of confinement shall not be fixed at less than fifteen years. The board shall retain jurisdiction over such convicted person throughout his natural life unless the governor by appropriate executive action orders otherwise."

offenses, that he faces a mandatory minimum sentence if found guilty.

■ There is no merit, however, to defendant's contention that the rationale of either line of cases applies equally well to instances in which the defendant is not told his guilty plea might be followed by the filing of habitual criminal proceedings. In *State v. Allen,* 75 Wn.2d 17, 448 P.2d 332 (1968), each of two defendants had two prior felony convictions at the time he was charged with felony escape, attempted escape and two counts of assault. As promised, and in exchange for pleas of guilty to the one count of escape, the prosecuting attorney dismissed "all other charges then pending" against each defendant. When, shortly thereafter, the State filed habitual criminal proceedings, both defendants moved to withdraw their pleas, contending they had understood "no further charges would be filed" against them. Noting defendants were not claiming the prosecuting attorney had specifically promised not to file habitual criminal proceedings, our Supreme Court quickly disposed of both appeals, stating at page 19:

> The Petitioner's plea of "guilty" would not appear to have been coerced or the result of duress, he at all times having had an attorney; his plea of "guilty" having been made in open Court; he having had an opportunity, in open Court, to withdraw said plea and not having done so; and he having received the benefits of such plea, agreements having been acknowledged in open Court, by the dismissal of 3 *other* felony charges.

We are not persuaded that either constitutional due process or the subsequent adoption of CrR 4.2(d),[4] dictates any change in the result reached in the *Allen* case. We hold the filing of habitual criminal proceedings is not a "direct consequence" of the entry of the plea of guilt. Rather, both

---

[4]CrR 4.2(d) provides:

"**Voluntariness.** The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge *and the consequences of the plea.* The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." (Italics ours.)

the habitual criminal proceedings and the results flowing therefrom in the way of maximum and minimum terms of imprisonment are "collateral" consequences at best. Even if the prosecuting attorney has knowledge of prior convictions he may, in the proper exercise of his discretion, elect not to file such charges. *Cf. State v. Alexander,* 10 Wn. App. 942, 521 P.2d 57 (1974). On the other hand, should he choose to file them the defendant must be arraigned on a supplemental information and is entitled to a jury trial with his full panoply of rights before the necessary finding of habitual criminal status is reached, if ever. *State v. Tatum,* 61 Wn.2d 576, 379 P.2d 372 (1963). In contradistinction, the mandatory minimum terms of RCW 9.41.025, and RCW 9.95.040(1), and other statutes which prescribe enhanced penalties for certain aggravated offenses, follow immediately upon the heels of a guilty plea to those specific charges and, as such, are a direct and natural consequence of the plea. As noted in *State v. Frazier, supra* at 634:

> In this case we are dealing with a factual determination [RCW 9.41.025] which, if determined adversely to the appellant, irrevocably forbids the court from exercising its independent judgment concerning whether the appellant is to receive a deferred or suspended sentence. The result of an adverse determination is to compel incarceration in the penal institutions for certain fixed minimum periods of time. This determination is all made prior to the imposition of final judgment and sentence.

Although the fact is not dispositive of the issue before us, we note defendant concedes throughout that the prosecuting attorney was not contemplating filing a supplemental information at any time before the plea was accepted. It would appear the decision to do so was triggered by either (1) receipt of defendant's "rap sheet" showing convictions not only in Oklahoma—where he was revoked on parole rather than pardoned as he had represented to the court— but also in California under the alias of Leroy A. Nash, or (2) issuance of the California fugitive warrant and defendant's escape in a stolen vehicle. These latter offenses, having been committed while defendant awaited sentencing on

his guilty plea, would have justified the prosecuting attorney in retreating from his promised recommendation in any event. *State v. Yates,* 13 Wn. App. 116, 533 P.2d 846 (1975).

■ As often noted by both this court and our State Supreme Court, CrR 4.2 was modeled after Federal Rule of Criminal Procedure 11, as it read prior to its amendment in 1974. Comment, *Washington Proposed Rules of Criminal Procedure* 48 (1971). Federal decisions interpreting Rule 11 are thus looked to for guidance in construing Rule 4.2. *Wood v. Morris, supra; State v. Newton,* 87 Wn.2d 363, 552 P.2d 682 (1976); *State v. Iredale,* 16 Wn. App. 53, 553 P.2d 1112 (1976). Among numerous decisions supporting the view expressed herein that a defendant need be apprised only of those consequences of a guilty plea which are "direct" and not "collateral" is *Cuthrell v. Director, Patuxent Inst.,* 475 F.2d 1364 (4th Cir. 1973), wherein the court states at pages 1365–66:

> The law is clear that a valid plea of guilty requires that the defendant be made aware of all "the direct consequences of his plea." Wade v. Coiner (4th Cir. 1972) 468 F. 2d 1059, 1060. By the same token, it is equally well settled that, before pleading, the defendant need not be advised of all collateral consequences of his plea, or, as one Court has phrased it, of all "possible ancillary or consequential results which are peculiar to the individual and which may flow from a conviction of a plea of guilty, * * *." . . .
>
> The distinction between "direct" and "collateral" consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a *definite, immediate and largely automatic effect* on the range of the defendant's punishment. Thus, when a defendant is sentenced under a guilty plea to the crime of escape, it is not required that the Court advise the defendant, before accepting the plea, that he is subject to the loss of his "good time" credit, previously earned, since, while the loss will increase the period of his actual confinement, *it is not "a definite, practical consequence of the plea" but is discretionary with the prison authorities* under Section 4165, 18 U.S.C.

(Italics ours.) *See also People v. Jackson,* 7 App. Div. 2d 804, 180 N.Y.S.2d 822 (1958); Annot., 97 A.L.R.2d *Guilty Plea—Warning of Consequences* 549 (1964). In *Cuthrell,* the petitioner was not told that his guilty plea would be followed by supplemental proceedings seeking his commitment under the Maryland Defective Delinquent Act. In affirming the district court's dismissal of Cuthrell's habeas corpus petition, the Circuit Court of Appeal stated further at page 1366:

Commitment to the Institution was not an automatic or immediate result of his plea. His plea simply made him a member of a class as a result of which he might be ordered to be evaluated by trained experts, and one, who, if the trained experts concluded, after examination, he was a defective delinquent, would be subject to a civil trial, before either a jury or the court as the defendant might choose, on the issue whether he was a defective delinquent. Commitment thus depended not directly on the defendant's plea but on *a subsequent, independent civil trial.* It was a collateral consequence of his plea.

So too, in the instant case, acceptance of Johnston's plea of guilty merely made him a member of a particular class, subjecting him to the *possibility* of a subsequent independent trial, in the State's discretion, to determine his recidivist status. Any enhancement of his sentence would thus be, not a direct but only a collateral or consequential result of his guilty plea.

We have not failed to note the Comment to the *Washington Proposed Rules of Criminal Procedure* 49 (1971):

The consequences of a guilty plea should be explained to the defendant. This would include: informing the defendant that his plea waives the right to a jury trial; that the maximum sentence of x years may be imposed; that there is a minimum sentence (if any); *and that previous convictions may be used to determine his sentence.*

(Italics ours.) Nor have we overlooked the A.B.A. proposed standard, *Minimum Standards for Criminal Justice— Standards Relating to Pleas of Guilty* 1.4(c)(iii), at 25

(1968).[5] The official commentary to this proposed standard reads in part as follows at page 28:

> It seems clear that a defendant should be told of the possible added punishment under multiple offender statutes. See Gannon v. United States, 208 F. 2d 772 (6th Cir. 1953). Because the judge, at the time he accepts the plea, will not know of the defendant's past record, it is necessary for the judge to advise the defendant in every case in which the multiple offender laws would apply if the defendant has a criminal record. The need for such warnings will not arise as often in states without general repeater statutes, but will still be necessary where the penalty provisions of particular statutes provide higher penalties for subsequent convictions of that crime, . . .
>
> . . . [T]his part of the standard applies only when it is possible, assuming past convictions, that the conviction following defendant's present plea could result in the prompt imposition of additional punishment by this jurisdiction. *The standard applies whether this additional punishment would result by virtue of a separate charge under a multiple offender law or by virtue of a special penalty provision applicable to the offense now charged.*

(Italics ours.) Our State Supreme Court did not see fit to adopt such an all encompassing rule even though the proposed standard first appeared in the A.B.A. Tentative Draft of February 1967 and was carried into the Approved Draft of February 1968. The proposed standards were noted by our State's Criminal Rules Task Force when it prepared and presented its proposed rules of criminal procedure to

---

[5]The proposed A.B.A. standard, subsequently published as *Minimum Standards for Criminal Justice—Standards Relating to Pleas of Guilty* 1.4(c)(iii) (1968), provides in part at page 25:

"The court should not accept a plea of guilty . . . from a defendant without first addressing the defendant personally and

". . .

"(c) informing him:

". . .

"(iii) when the offense charged is one for which a different or additional punishment is authorized by reason of the fact that the defendant has previously been convicted of an offense, that this fact may be established after his plea in the present action if he has been previously convicted, thereby subjecting him to such different or additional punishment."

the Washington Judicial Council on May 15, 1971. It must be assumed our Supreme Court considered the A.B.A. standards when it chose to adopt present CrR 4.2(d) on July 1, 1973, in substantially the form proposed by the Judicial Council. Moreover, in its discussion of the 1974 amendments to Fed. R. Crim. P. 11, the federal Advisory Committee comments as follows:

> The ABA Standards Relating to Pleas of Guilty, §1.4(c)(iii) (Approved Draft, 1968) recommend that the defendant be informed that he may be subject to additional punishment if the offense charged is one for which a different or additional punishment is authorized by reason of the defendant's previous conviction.
>
> Under the rule the judge *is not required* to inform a defendant about these matters, though a judge is free to do so if he feels a consequence of a plea of guilty in a particular case is likely to be of real significance to the defendant. Currently, certain consequences of a plea of guilty, such as parole eligibility, may be so complicated that it is not feasible to expect a judge to clearly advise the defendant. . . . At the time the judge is required to advise the defendant of the consequences of his plea, the judge will usually not have seen the presentence report and thus will have no basis for giving a defendant any very realistic advice as to when he might be eligible for parole. *Similar complications exist with regard to other, particularly collateral, consequences of a plea of guilty in a given case.*

(Italics ours.) 18 U.S.C.A. Fed. R. Crim. P. 11 (1975), at 22.

We decline to adopt the rule contended for by defendant and exemplified by the A.B.A. proposed standard. There are several practical considerations militating against embracing such a requirement in our jurisdiction: the prosecution often does not have evidence of prior convictions at hand during the plea negotiations; such negotiations normally begin immediately after a defendant's first appearance and proceed apace—in part because of the speedy trial requirements of CrR 3.3; absent a defendant's complete candor and total recall, the State may not know of defendant's prior criminal history until the often–delayed receipt

of the FBI report, or until completion of a presentence investigation. Lastly, even if prior convictions are known to the State, its intention to press for habitual criminal status may be predicated upon a defendant's later breach of his bargain or because he has committed other crimes pending sentencing, as was true in the case of defendant Johnston. These are but some of the reasons the State ought not be estopped from filing such proceedings after acceptance of a guilty plea. It was not error to deny Johnston's motion to withdraw his plea of guilty.

■ At trial, in addition to evidence of the Oklahoma conviction, the State proved a 1969 Sacramento County, California Superior Court conviction for aggravated assault. Defendant sought to challenge the validity of the California conviction by offering proof that the Orange County Municipal Court later dismissed a charge of being a felon in possession of a firearm on a finding the Sacramento assault conviction was invalid because defendant had not intelligently waived his right to a jury trial. The trial court refused to admit or consider this evidence. The State's contention is that defendant's failure to directly attack his assault conviction either by appeal or by seeking post–conviction relief precludes him from doing so collaterally in the instant proceedings. In this the State errs. The general rule is that judgments, including criminal convictions of sister states, are accorded full faith and credit and their validity may not be collaterally attacked. *State v. Lindsey,* 150 Wash. 121, 272 P. 72 (1928). The rule does not apply, however, when the foreign judgment challenged is void for want of jurisdiction. *Brown v. Brown,* 46 Wn.2d 370, 281 P.2d 850 (1955); *State v. Dericho,* 107 Wash. 468, 182 P. 597 (1919). In the instant case, Johnston was claiming a constitutional infirmity of the California conviction. If it was constitutionally required that he be informed of and intelligently waive his right to a jury trial at the time his plea was entered, a failure to do so has been held to deprive the trial court of jurisdiction so as to render void a subsequent conviction. *Cf. Burgett v. Texas,* 389 U.S. 109, 19 L. Ed. 2d

319, 88 S. Ct. 258 (1967) (prior convictions used to enhance punishment void on their face as not evidencing representation by or waiver of counsel, as required by *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A.L.R.2d 733 (1963)). *See also Loper v. Beto,* 405 U.S. 473, 31 L. Ed. 2d 374, 92 S. Ct. 1014 (1972).

We note initially the records of the Sacramento County Superior Court evidence throughout that Johnston was represented by counsel, thus obviating any problem under *Burgett v. Texas, supra.* These documents also recite that defendant was advised of his "constitutional rights" prior to entering his plea. Defendant contends, however, he was not *in fact* told of his right to jury trial and did not knowingly waive that right. Assuming defendant is correct in this regard he has cited us to no authority for his proposition that such advice was mandated by either the federal or California State Constitution on the day his plea was tendered and accepted. In oral argument before this court, defendant appeared to rely upon the holding in *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969), which holds *inter alia* that the due process clause of the Fourteenth Amendment requires reversal of a conviction founded on a plea of guilty when the record does not affirmatively disclose an intelligent and voluntary waiver of (1) the privilege against self–incrimination, (2) the right to a jury trial, and (3) the right to confront one's accusers. Defendant's confidence in *Boykin* is misplaced, however, because that decision is not to be applied retroactively to pleas accepted prior to the date of that decision, June 2, 1969. *McBain v. Maxwell,* 2 Wn. App. 27, 466 P.2d 177 (1970); *Miller v. Rhay,* 1 Wn. App. 1010, 466 P.2d 179 (1970); *Moss v. Craven,* 427 F.2d 139 (9th Cir. 1970); *United States ex rel. Hughes v. Rundle,* 419 F.2d 116, 118 (3d Cir. 1969); *In re Tahl,* 1 Cal. 3d 122, 134, 135, 460 P.2d 449, 81 Cal. Rptr. 577, 585, 586 (1969).

Interestingly enough, Johnston's conviction was entered on June 2, 1969, the very day on which *Boykin* was decided, but the Sacramento court record shows his guilty plea was

accepted in February 1969. Thus, even had the defendant been permitted to present evidence in support of his position on the validity of the California conviction, it would have availed him nothing.

Nor can the defendant take any comfort in the fact the charge of being a felon in possession of a firearm was dismissed by the Orange County Municipal Court.[6] Even though it was permissible for him to question the validity of the Sacramento judgment collaterally in defense of a subsequent criminal charge based thereon, it would have been beyond the jurisdiction of the lower California tribunal to adjudicate its validity as an *ultimate issue*. First, because the attack is collateral rather than direct, the issue resolved must of necessity be a collateral issue; the resolution of that issue is not therefore a final and binding adjudication of that judgment's validity. Second, inferior courts such as the municipal court have no jurisdiction to entertain proceedings seeking to reverse, vacate or otherwise nullify the judgments of their state's trial courts of general jurisdiction. Thus, defendant's position that either res judicata or collateral estoppel, based upon the municipal court's finding, preclude the State of Washington from relying on the California assault conviction is untenable.

Defendant also challenges the constitutionality of our habitual criminal statutes on equal protection grounds. His arguments have already been answered. *See State v. Lee,* 87 Wn.2d 932, 558 P.2d 236 (1976); *State v. Thompson,* 16 Wn. App. 883, 559 P.2d 1370 (1977); *State v. Thomas,* 16 Wn. App. 1, 553 P.2d 1357 (1976).

---

[6]Originally defendant was charged with two felonies, the municipal court sitting as committing magistrate only. Defendant was bound over on both charges to the superior court which then, under California Penal Code provisions, remanded them to municipal court for trial as misdemeanors. Even though defendant secured dismissal of one count, he was found guilty of the other. Assuming the penalty for the crime of which he was convicted would qualify it as a felony under our law (a fact necessary to be proved under RCW 9.92.090), an interesting question arises as to whether conviction and sentence on that charge as a misdemeanor would support habitual criminal proceedings in this state. The question was not presented and has not been resolved here.

■ Lastly we turn to defendant's appeal in 2050–2, relating to his conviction for escape and grand larceny of a motor vehicle; we are convinced that defense counsel's motion to withdraw pursuant to *Anders v. California,* 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967), and *State v. Theobald,* 78 Wn.2d 184, 470 P.2d 188 (1970), should be granted. Any error in the sheriff's failure to subpoena a defense witness was not properly preserved, the defendant having failed to seek a continuance to show the materiality of the missing testimony, and to use due diligence to procure the witness' testimony. *State v. Douglas,* 193 Wash. 425, 75 P.2d 1005 (1938); *State v. Mims,* 9 Wn. App. 213, 511 P.2d 1383 (1973). Our independent review of the record reveals no irregularities rising to the status of reversible error, and accordingly, defense counsel's motion to withdraw is granted and the appeal is dismissed. The judgments in both causes are affirmed.

PETRIE, C.J., and JOHNSON, J. Pro Tem., concur.

Petition for rehearing denied June 1, 1977.

Review denied by Supreme Court November 4, 1977.