**Mark Edward WAYT, Appellant (Defendant),**

v.

**STATE of Wyoming, Appellee (Plaintiff).**

**No. 90–179.**

Supreme Court of Wyoming.

April 29, 1991.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Defender Aid Program, and Laurie E. Anderson, Student Intern for the Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Karen A. Byrne, Sr. Asst. Atty. Gen., Mike Pauling, Asst. Atty. Gen., Theodore E. Lauer, Director of the Prosecution Assistance Program, and Don F. Shreve, Jr., Student Intern for the Prosecution Assistance Program, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

## OPINION

MACY, Justice.

Appellant Mark Edward Wayt appeals from his conviction for the wrongful disposition of a drilling bit.

We reverse.

Appellant presents the following issues for our review:

I. Whether an instruction permitting an inf[er]ence of guilty knowledge from the possession of recently stolen property should be given in the absence of corroborative evidence tending to prove Defendant's guilt; and whether under the facts of this case, the jury could possibly find corroboration.

II. Whether the court erred in refusing either or both requested instructions that presented the Defendant's theory of the case, i.e. that Defendant's conceded possession of stolen property was compatible with innocence.

On August 14, 1989, Darrel Aanestad placed two new drilling bits in a fenced storage area near Casper, Wyoming. One week later, Aanestad returned to the storage area and discovered that the drilling bits were gone. Aanestad informed the sheriff's department that the bits were missing and placed a notice in the newspaper stating that they were stolen. On August 19, 1989, Appellant approached James Anderson, President of Anderson Seismograph Bit Service, at his place of business in Casper and asked him if he wanted to buy a new drilling bit. Anderson had previously purchased used drilling bits from Appellant. Appellant showed the bit to Anderson and offered to sell it for $1,500. Anderson agreed to purchase the bit for $1,400. The suggested retail price for the bit was $5,138. At Appellant's trial, Anderson testified that he could have sold the bit for approximately $3,000 and that it was not unusual for secondhand bits to be sold for an amount less than the suggested retail price.

The week after Anderson purchased the bit, he saw Aanestad's notice in the newspaper, and he called Aanestad. The serial numbers on the bit Anderson purchased from Appellant matched the numbers from one of the missing bits. The police arrested Appellant, and he was charged with larceny in violation of Wyo.Stat. § 6-3-402 (1988) and with the wrongful disposition of property in violation of Wyo.Stat. § 6-3-403 (1988). The larceny charge was dismissed, and a jury found Appellant guilty of the wrongful disposition of property. The district court sentenced Appellant to the Wyoming State Penitentiary for a minimum of three years and a maximum of five years.

While the issues Appellant submitted for our review focus on an instruction which the district court gave to the jury and on an instruction which the district court refused to give to the jury, Appellant also argues that the evidence presented at the trial is insufficient to sustain his conviction because the State did not prove Appellant knew, believed, or had reasonable cause to believe that the bit was stolen. Because

that issue is dispositive, we will not address the issues relating to the jury instructions.

When reviewing a conviction to determine if it is supported by sufficient evidence, we examine all the evidence in the light most favorable to the State. *Roose v. State*, 759 P.2d 478 (Wyo.1988).

> "[I]t is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State.

> \* \* \* \* \* \*

> "It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsibility of the jury to resolve conflicts in the evidence." *Broom v. State*, Wyo., 695 P.2d 640, 642 (1985) (citations omitted).

*Roose*, 759 P.2d at 487.

Section 6–3–403(a) provides in pertinent part:

> (a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:

>> (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more \* \* \*[.]

Pursuant to that provision, the State had the burden of proving (1) that Appellant bought, received, concealed, or disposed of property (2) which he knew, believed, or had reasonable cause to believe was obtained in violation of law and (3) that the value of the property was more than $500. *Capshaw v. State*, 737 P.2d 740 (Wyo. 1987).

We have previously discussed inferences which may be relied upon to support a conviction for the wrongful disposition of property. In *Harley v. State*, 737 P.2d 750, 753 (Wyo.1987), we approved of the following jury instruction which the appellant claimed violated his due process rights:

> "Possession of recently stolen property is not of itself sufficient to permit a finding that the Defendant is guilty of the crime charged. However, possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which the Jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen, and, is also a circumstance from which the jury may reasonably draw the inference that the person in possession not only knew it was stolen property, but also participated in some way in the theft of the property. "Although possession is a strong circumstance tending to show guilt, there must be corroborative evidence tending to prove Defendant's guilt. However, this corroborative evidence need only be slight. As corroboration, you may consider whether the Defendant had the opportunity to commit the crime charged, his conduct, his false or contradicting statements, if any, or other statements he may have made with reference to the property and any other evidence which tends to connect him with the crime.

> "If you find beyond a reasonable doubt from the evidence that the property was stolen, and that, while recently stolen, the property was in the possession of the Defendant, you may, from those facts, draw the inference not only that the property was possessed by the Defendant with knowledge that it was stolen, but also that Defendant participated in some way in the theft, unless such possession by the Defendant is explained to the satisfaction of the Jury by other facts and circumstances in evidence of the case."

In *Tageant v. State*, 673 P.2d 651 (Wyo. 1983), we addressed the issue of sufficiency

of the evidence in a case which involved the receipt of stolen drilling bits. In that case, the record showed that on three different occasions the appellant attempted to buy drilling bits. Shortly after each of the appellant's inquiries, the bits were stolen. After each theft, the appellant was in possession of the bits when he attempted to sell them. At his trial, the appellant did not testify, and he did not present any evidence which explained his possession of the stolen property. On appeal, the appellant challenged the sufficiency of the evidence demonstrating that he had knowledge that the bits were stolen. This Court stated that naked possession of stolen property was not enough to give rise to the inference that the possessor had the requisite guilty knowledge needed to sustain a conviction. The Court went on to hold:

> There must be some other evidence of circumstances surrounding possession of stolen property of sufficient weight and credibility from which * * * a reasonable juror could find beyond a reasonable doubt that the accused knew the property was stolen at the time it was received or concealed by him.

*Id.* at 654. The Court listed the following circumstances which, when combined with an unexplained possession of stolen property, have been held to be sufficient to support a finding of guilty knowledge:

> (a) attempts to dispose of the property at an amount considerably below its fair value; (b) an unusual manner of acquisition or dealing with the property; (c) knowledge of the accused beforehand of the location, nature, or value of the property later stolen; (d) prior possession of other stolen property by the accused; (e) the relative length of time between the theft and fact of possession; (f) admissions or contradictory or evasive statements by the accused; and (g) other incriminating evidence and circumstances surrounding the entire incident.

*Id.* at 655. The Court upheld the appellant's conviction because of the appellant's prior knowledge of the stolen property, the relatively short period of time between the appellant's acquisition of knowledge about the bits and the thefts, and, as to each subsequent charge, the appellant's prior possession of stolen property. *Id.* at 656.

In this case, Appellant did not testify at his trial, and he did not present any evidence which explained his possession of the bit. Unlike in *Tageant*, however, the State did not prove by corroborating evidence that Appellant knew, believed, or had reasonable cause to believe that the bit was obtained in violation of law. The record does not show that Appellant acquired or disposed of the bit in an unusual manner. In addition, the State did not prove that Appellant had prior knowledge of the location, nature, or value of the bit or that Appellant had prior possession of other stolen property. The State attempts to make hay out of the fact that Appellant tried to sell the bit for $1,500 when its suggested retail price was $5,138. That discrepancy does not corroborate the claim that Appellant knew the bit was stolen because Anderson testified that it was not unusual for secondhand bits to be sold for an amount considerably less than the suggested retail price.[1]

The State also argues that Appellant falsely told Anderson that the bit came from Texas. The State relies upon the following statements given by Anderson at the trial:

> Q. Did you ask him where he had gotten the bit?
>
> A. Yes, vaguely. He said he had been on a trip to Texas, whether or not he said he brought it back from Texas with him, I don't honestly remember.
>
> Q. So you are a little bit hazy on that conversation?
>
> A. Yes, right.
>
> Q. What did you say, as near as you can recall, at that point in time where you asked him where did you get this bit?

---

1. One definition of secondhand is: "received from or through an intermediary rather than directly from the source." Webster's Third New International Dictionary 2051 (1961). Hence, an object can be both new (unused) and secondhand.

A. He said he had been in Texas, and that was about it. I said, Okay.

Q. And that was the response that he had been in Texas was in direct response to your question, where did you get this bit?

A. As I remember, yes.

Anderson's testimony simply does not indicate that Appellant made any incriminating, evasive, or contradictory statements.

Finally, the State contends that the conclusion that Appellant knew the bit was stolen was corroborated by the fact that he sold the bit soon after it was removed from the storage area. The fact that the period of time between Aanestad's placement of the bit in the storage area and Appellant's sale of the bit was only five days, by itself, is not enough to establish Appellant's guilty knowledge. We hold that the evidence is insufficient to support the conclusion that Appellant knew, believed, or had reasonable cause to believe that the bit was obtained in violation of law. Therefore, we reverse Appellant's conviction for the wrongful disposition of property.

Reversed.

CARDINE, J., filed a dissenting opinion in which GOLDEN, J., joined.

GOLDEN, J., filed a dissenting opinion in which CARDINE, J., joined.

CARDINE, Justice, dissenting, with whom GOLDEN, Justice, joins.

Although joining in Justice Golden's dissent, I am compelled to write separately because the court throughout the opinion cites the governing law and then misapplies, misunderstands, or confuses the application of the law to the facts of this case. For example, the court, citing *Broom v. State*, 695 P.2d 640, 642 (Wyo. 1985), states:

"It is not our function to weigh the evidence for a determination as to whether or not it is sufficient to establish guilt beyond a reasonable doubt. We have consistently held that even though it is possible to draw other inferences from the evidence presented, it is the responsi-

bility of the jury to resolve conflicts in the evidence." At 804.

The court then proceeds to weigh the evidence and draw different inferences to reverse this jury verdict.

The court next cites with approval and reaffirms as a correct statement of law the following instruction:

"Possession of recently stolen property is not of itself sufficient to permit a finding that the Defendant is guilty of the crime charged. However, possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which the Jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen, and, is also a circumstance from which the jury may reasonably draw the inference that the person in possession not only knew it was stolen property, but also participated in some way in the theft of the property. "Although possession is a strong circumstance tending to show guilt, there must be corroborative evidence tending to prove Defendant's guilt. However, this corroborative evidence need only be slight." At 804.

The court then quotes liberally from *Tageant v. State*, 673 P.2d 651 (Wyo.1983), and concludes that unlike *Tageant*, the State

"did not prove by *corroborating evidence* that Appellant knew, believed, or had reasonable cause to believe that the bit was obtained in violation of law." (emphasis added) At 805.

In light of that statement, I find quite troubling within the majority opinion the following statement:

"In this case, Appellant did not testify at his trial, and he did not present any evidence which explained his possession of the bit." At 805.

In the above instruction to the jury, cited with approval, it is said that

"possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which the Jury

may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen * * *."

The inference the jury was entitled to draw pursuant to the law of the case was significant and telling *corroboration* of the fact that appellant knew, believed, or had reasonable cause to believe the bit was obtained in violation of law.

Next the majority states in the opinion: "The record does not show that Appellant acquired or disposed of the bit in an unusual manner." At 805.

The statement is patently wrong. The disposition of this bit was indeed unusual. This appellant was a dealer who had sold many used bits, but never before had he sold a *brand new bit* to Anderson—more corroborating evidence.

The court then states: "The State attempts to make hay out of the fact that Appellant tried to sell the bit for $1,500 when its suggested retail price was $5,138. That discrepancy does not corroborate the claim that Appellant knew the bit was stolen because Anderson testified that it was not unusual for secondhand bits to be sold for an amount considerably less than the suggested retail price." At 805–806.

But this was not a secondhand bit. It was a *brand new bit*. And, of course, the State made hay out of the discrepancy as it should—and so too probably the jury in drawing proper inferences. More corroboration.

Finally, the majority states: When the purchaser of the bit, Anderson, asked appellant where he had "gotten the bit," appellant said he had been in Texas. The State's attorney then queried as follows:

"Q. [T]he response that he had been in Texas was in direct response to your question, where did you get this bit?

"A. As I remember, yes."

Surprisingly, the court then concludes: "Anderson's testimony simply does not indicate that Appellant made any * * * evasive * * * statements." At 805. The majority cannot be serious. The answer seems evasive. At least the answer was not a direct response to the question. I would consider the following similar examples also to be evasive. A man apprehended with $100,000 in cash when asked where did you get this money, responds, "I've been to Texas." A man with a gun when asked where did you get this gun, responds, "I've been to Texas." These examples illustrate why I cannot accept the court's conclusion.

The above demonstrates substantial corroborative evidence exists sufficient to support a finding of guilty knowledge and allow *a jury*, acting within its responsibility, to properly find a reasonable inference of guilt, as it did in this case. The majority has gone beyond its responsibility by acting as a jury itself.

Finally, with issuance of this opinion, what is the law respecting receiving, concealing or disposing of stolen property? As I read this opinion, the State failed only to prove that appellant "had prior knowledge of the location, nature, or value of the bit or that Appellant had prior possession of other stolen property." At 804. In the future then, one must assume, based upon this opinion, that the State must prove in addition to all of the above, that the thief knows of the nature, location, and value of property before stealing that property *or* possesses other stolen property. This is indeed a strange new element of proof necessary to convict under W.S. 6–3–403(a).

I would affirm.

GOLDEN, Justice, dissenting, in which CARDINE, Justice, joins.

I respectfully dissent. Wayt's conviction was supported by sufficient evidence. He possessed recently stolen property. Aanestad placed two *new*, not secondhand, drilling bits in the fenced storage area in Casper on August 14, 1989. On August 19, 1989, Wayt sold one of those new drilling bits to Anderson in Casper for almost $4,000 less than the suggested retail price. At trial Wayt neither testified nor presented any evidence to explain his August 19

possession of the new drilling bit. In view of Wayt's failure to explain satisfactorily his possession of the stolen new drilling bit, his possession of it was a circumstance from which the jury could reasonably have drawn the inference and find, in light of the surrounding circumstances shown by the evidence, that Wayt knew the new drilling bit had been stolen. His unexplained possession of the new drilling bit was also a circumstance from which the jury could reasonably have drawn the inference that Wayt not only knew the new drilling bit was stolen, but also participated in some way in the theft of the bit.

In addition to Wayt's possession of the new drilling bit, corroborative evidence tending to prove Wayt's guilt existed. The jury was entitled to consider Wayt's conduct. Before August 19, Wayt had sold Anderson only used drilling bits; on August 19 he sold a new one. The jury was entitled to consider Wayt's statement to Anderson when the latter asked the former where he got the new bit. Wayt's answer was, in Anderson's words, "He said he had been in Texas." The jury reasonably could have viewed Wayt's answer as evasive; it reasonably could have viewed Wayt's answer as incredible, i.e., it was extremely unlikely the stolen new drilling bit could have traveled from Casper on or after August 14, down to Texas, into Wayt's possession there, and then back to Casper by August 19. The jury was entitled to consider the substantial difference between the suggested retail price of a new drilling bit at $5,138 and the price of $1,400 for which Wayt sold his new drilling bit to Anderson. These pieces of corroborative evidence which the jury was entitled to consider may be slight, although in my judgment they are of a weight greater than that; under our law, that corroborative evidence need only be slight.

The evidence consisted of Wayt's unexplained possession of the recently stolen new drilling bit and the corroborative evidence just described. As I view that evidence in the light most favorable to the state, I am satisfied that it was sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury. Since it is not my function as an appellate jurist to weigh the evidence for a determination as to whether or not the evidence is sufficient to establish guilt beyond a reasonable doubt, I have not done so.

I would affirm Wayt's conviction.