Frank Eugene JOHNSTON,
Appellant (Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 91–98.

Supreme Court of Wyoming.

April 23, 1992.

Leonard D. Munker, State Public Defender, Gerald M. Gallivan, Defender Aid Program, and Donald L. Fuller (argued), Student Director, Defender Aid Program, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia Lee Hackl (argued), Deputy Atty. Gen., and Barbara L. Boyer, Sr. Asst. Atty. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

CARDINE, Justice.

Frank Eugene Johnston appeals the trial court's determination that he is an habitual criminal within the meaning of W.S. 6–10–201(a). As a consequence of his habitual criminal status, he received a mandatory sentence of life imprisonment. Appellant challenges the use of two of his prior felony convictions as underlying offenses for purposes of the habitual criminal determination.

We affirm.

Appellant raises the following issues:

I. Did the trial court commit reversible error in accepting as a previous conviction for purposes of the habitual criminal statute an illegal *Alford* plea agreement from Missouri that lacked a strong factual basis?

II. Did the trial court err in accepting a plea agreement from [the] state of Washington as a previous conviction for the purposes of the habitual criminal statute where the defendant received a greater sentence than was the maximum allowed?

Appellant's trial was bifurcated. On December 18, 1990, after the first portion of the trial, a jury found appellant guilty of one count of second degree sexual assault. That conviction is not at issue in this appeal. In the second stage of the trial, the State sought to have appellant adjudged an habitual criminal. The State provided evidence of three prior felony convictions: (1) a conviction of grand larceny from the Washington Superior Court in Clallam County, Washington; (2) a conviction of stealing from the Circuit Court of Jasper County, Missouri; and (3) a conviction of theft from the District Court of Nemaha County, Kansas.

The State entered into evidence certified copies of the judgment and sentence for each of these convictions. It also put on testimony which identified appellant as the person who had been convicted of the prior felonies. After deliberations, the jury found that appellant had been convicted of a felony on three prior occasions upon charges separately brought and tried. On March 18, 1991, the trial court sentenced appellant to life imprisonment for second degree sexual assault enhanced by his status as an habitual criminal. Appellant took timely appeal from the court's judgment and sentence.

Wyoming's habitual criminal statute, W.S. 6–10–201, provides as follows:

(a) A person is an habitual criminal if:

(i) He is convicted of a violent felony; and

(ii) He has been convicted of a felony on two (2) or more previous charges separately brought and tried which arose out of separate occurrences in this state or elsewhere.

(b) An habitual criminal shall be punished by imprisonment for:

\* \* \* \* \* \*

(ii) Life, if he has three (3) or more previous convictions.

Appellant attacks collaterally his prior convictions used for enhancement. He does not deny having been convicted of the crimes. He asserts, however, that two of the prior convictions were defective and should not have been used against him in this enhancement proceeding. He contends the Missouri conviction, because there was no factual basis for his guilty plea, and the Washington conviction, because he was not advised of the penalty under Washington's habitual criminal statute when he pled guilty, should not have been used.

We have stated that a person charged under Wyoming's habitual criminal statute is "not precluded from [among other things] producing evidence that the prior offenses charged had not been committed, that they were not felonies, [or] that there were irregularities in the records of conviction or numerous deficiencies in foundation." *Evans v. State*, 655 P.2d 1214, 1221 (Wyo.1982). In dicta, we also noted the availability of certain affirmative defenses, including "infirmities in the prior convictions" which rendered them "open to collateral attack." *Id.*, at 1222. Here, appellant's collateral attack is based upon a holding of the United States Supreme Court that a conviction obtained in violation of a defendant's constitutional rights may not be used for sentence enhancement purposes. *See Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967).

In *Evans*, we indicated that a defendant has the burden of proof when asserting an affirmative defense (such as invalidity of an underlying conviction) in an habitual criminal proceeding. *Evans*, at 1222. Since then, we have refined our burden of proof standard in the context of a conviction of an habitual traffic offender. In *City of Laramie v. Cowden*, 777 P.2d 1089, 1091 (Wyo.1989), we stated that the

defendant mounting a constitutional challenge to an underlying conviction in an habitual traffic offender proceeding must make a prima facie showing that one or more of his underlying convictions was not obtained in accordance with his constitutional rights. Once the defendant makes this showing, the prosecution has the burden of establishing, by a preponderance of the evidence, that the conviction was constitutionally obtained. We now hold this same standard applies to proceedings under the habitual criminal statute.

■ Appellant challenges the use of his Missouri conviction because he claims there was no factual basis for the guilty plea he entered in that case. The record reveals that appellant was actually charged with two separate counts of theft in Missouri. One case, number CR586–215FX, concerned his alleged theft of a sign. The other case, number CR586–150FX, concerned theft of a steel beam. Appellant denied committing the offenses but entered an *Alford* plea to both charges in exchange for three-year concurrent sentences. These concurrent sentences were also to run concurrently with sentences he was subjected to in Oklahoma and Kansas.

The *Alford* plea was first recognized in *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). In that case, the defendant entered a plea of guilty to a charge of second degree murder, ostensibly to avoid a death sentence for first degree murder. However, when questioned by the trial court about the basis for his plea, he would not admit to committing the murder. On appeal, the United States Supreme Court addressed the question of whether a defendant may plead guilty to a crime and yet deny committing it. The Court stated as follows:

> [W]hile most pleas of guilty consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty. An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

*Alford,* 400 U.S. at 37, 91 S.Ct. at 167.

Appellant notes that acceptance of an *Alford* plea requires that there be "strong evidence of actual guilt" to negate the claim of innocence and to provide a means by which the trial court can test whether the plea was intelligently entered. *Alford,* 400 U.S. at 37–38, 91 S.Ct. at 167. He claims that there is not such "strong evidence" of specific intent to steal in the Missouri convictions. We disagree.

After appellant indicated his desire to enter an *Alford* plea, the trial court questioned appellant on his basis for considering himself not guilty of the charges. Appellant responded as to the steel beam that he had received it on credit, that he had promised to pay Standard Iron and Steel for it when he finished the job, and that he had been injured that same day and was unable to complete the job. As to the sign, appellant stated that he might have made a mistake and sold a sign that he had rented rather than the sign he had purchased and intended to sell.

The court then asked the prosecutor to detail the facts the State would prove if the case went to trial. The prosecutor responded that the State would put on testimony of the man who rented appellant the sign and of the person who bought it from appellant, and that the evidence would show appellant's knowing disposal of another's property. As to the steel beam, the State would put on the testimony of an employee of Standard Iron and Steel that they had sold the beam to appellant but that when he came to pick it up, he asked for credit. When credit was refused, appellant stated he would go get a check and pay for the beam. He took the beam with him and never returned it or paid for it. Upon further inquiry by the court, appellant expanded his version of the incident but did not substantially contradict what the prosecutor had said. After listening to appellant for awhile, the court finally cut him off and moved on.

The court stated that it looked like the State had "some pretty good cases"

against appellant and then accepted his guilty pleas. The trial judge, who had the opportunity of observing appellant in person, was obviously skeptical of appellant's explanations of the crimes charged. At one point, the judge asked him whether his other convictions in Kansas and Oklahoma were "all from mistakes, too." Even appellant acknowledged the strength of the prosecution's case; he stated that "the evidence which they [the prosecution] have against me, even taken into court, would probably be where I would receive more time than if I made the deal with the D.A.'s office." Finally, the court made a finding in each case that there was a factual basis for the pleas.

Appellant claims that there is insufficient evidence under Wyoming law to show that he had the specific intent to steal to support his Missouri convictions. He cites *Wayt v. State*, 809 P.2d 802 (Wyo.1991). In *Wayt*, we reversed a conviction of wrongful disposition of property for lack of specific evidence. The facts of *Wayt*, however, differ from those found here. In *Wayt*, there was insufficient evidence to connect the defendant to the theft of the property. His possession of recently stolen property, without more, was held to be insufficient to show that he knew, believed or had reasonable cause to believe that the stolen drill bit was obtained in violation of the law. Here, by contrast, the prosecutor detailed testimony to be offered that would have shown, in both cases, how appellant both received and disposed of, or failed to return, the stolen property. The requisite specific intent or knowledge could have been easily inferred under the circumstances in appellant's cases.

■ Even if there was some doubt whether appellant was prevented from paying for the steel beam by events beyond his control, there was no such doubt in the case of the sign. Appellant admitted that it was rented by him and wrongfully sold to another. Appellant's story, which vaguely suggested that it was all a mistake made by him or one of his employees, might have provided him with a bona fide defense had he gone to trial. However, he made a strategic decision not to do so. The mere fact that a bona fide defense might exist does not vitiate the entry of an *Alford* plea. *See United States v. Cronic*, 466 U.S. 648, 656 n. 19, 104 S.Ct. 2039, 2045–46 n. 19, 80 L.Ed.2d 657 (1984), and cases cited therein.

Having reviewed the evidence which the Missouri court considered and the reasonable inferences which can be drawn therefrom, we hold there was sufficiently "strong evidence" to sustain the trial court's acceptance of appellant's *Alford* plea. Appellant has failed to make a prima facie showing of unconstitutionality of appellant's Missouri convictions. They were thus properly accepted by the Wyoming court for purposes of sentence enhancement.

■ Appellant next challenges the use of his Washington conviction for purposes of enhancement. In Washington, appellant was charged with two felonies: second degree burglary and grand larceny. He pled guilty to grand larceny in exchange for the second degree burglary count being dropped. While awaiting sentence on his guilty plea, appellant committed an additional felony in California. The prosecution received his rap sheet, showing other prior convictions in Oklahoma and California. The prosecutor then filed an amended supplemental information accusing appellant of being an habitual offender under Washington law.

Appellant responded by seeking to set aside his guilty plea to grand larceny. The trial court denied this motion. The habitual criminal count went to trial, and a jury found that appellant had committed two prior felonies. Appellant was sentenced to a maximum of life imprisonment for being an habitual criminal. A minimum term of fifteen years was later established by the State of Washington Board of Prison Terms and Paroles. Appellant took appeal, claiming that his sentence was improperly enhanced because his guilty plea was entered without knowledge that he could receive the fifteen-year-to-life term for being an habitual criminal. His sentence was affirmed by the Washington Court of Ap-

peals. However, after remand, the trial court dismissed his habitual criminal conviction because one of the underlying offenses had subsequently been reversed by another court.

Appellant now complains that the underlying Washington conviction which was not reversed should not be considered for enhancement purposes in Wyoming because he was not informed that he could receive a fifteen-year-to-life habitual criminal sentence in Washington. Appellant's contention, that failure to inform him of the possibility of an habitual criminal sentence voids the underlying plea, is identical to that already disposed of in his direct appeal, *State v. Johnston*, 17 Wash.App. 486, 564 P.2d 1159 (1977). In that case, the Washington Court of Appeals said the following:

> There are several practical considerations militating against embracing [a rule requiring judges to disclose possible habitual criminal penalties when a defendant pleads guilty] in our jurisdiction: the prosecution often does not have evidence of prior convictions at hand during the plea negotiations; such negotiations normally begin immediately after a defendant's first appearance and proceed apace—in part because of the speedy trial requirements of CrR 3.3; absent a defendant's complete candor and total recall, the State may not know of defendant's prior criminal history until the often-delayed receipt of the FBI report, or until completion of a presentence investigation. Lastly, even if prior convictions are known to the State, its intention to press for habitual criminal status may be predicated upon a defendant's later breach of his bargain or because he has committed other crimes pending sentencing, as was true in the case of defendant Johnston. These are but some of the reasons the State ought not be estopped from filing such proceedings after acceptance of a guilty plea.

*Johnston*, 564 P.2d at 1165.

The particular issue raised by appellant has not been considered previously by this court. Our W.R.Cr.P. 15(c) (now amended Rule 11(b)) provides that the

court must advise the defendant in open court of the maximum penalty provided by law prior to accepting his plea of guilty. However, the rule does not extend to every possible consequence or configuration of sentencing. We have said, for example, that a trial court has no duty to inform a defendant of the possibility of consecutive sentencing prior to accepting a guilty plea, *Duffy v. State*, 789 P.2d 821, 834 (Wyo. 1990), or to inform a defendant of the collateral penalty of possible deportation or extradition, *Carson v. State*, 755 P.2d 242, 244 (Wyo.1988). We have examined the reasoning of the Washington Court of Appeals in light of these principles and are persuaded that its reasoning and conclusion that a court need not advise a defendant of the collateral consequence of habitual offender status when accepting a plea of guilty is correct under Wyoming law. We therefore reject appellant's constitutional argument and give the decision full faith and credit for purposes of sentence enhancement.

Appellant has failed to make out a prima facie case of unconstitutionality of either his Missouri or Washington convictions. They were properly used to enhance his sentence in the habitual criminal proceeding. The trial court's judgment and sentence is affirmed.