Patrick DUDLEY, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 97–30.

Supreme Court of Wyoming.

Jan. 14, 1998.

Sylvia Lee Hackl, State Public Defender; and Donna D. Domonkos, Appellate Counsel, for Appellant (Defendant).

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Barbara L. Boyer, Senior Assistant Attorney General, for Appellee (Plaintiff).

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

LEHMAN, Justice.

Appellant Patrick Dudley appeals his conviction for aggravated assault, claiming the testimony of a police officer implied his opinion that appellant was guilty and inappropriately enhanced the credibility of the victim. Appellant also contends ineffective representation by counsel. Finding no error which would warrant the reversal of his conviction, we affirm.

### ISSUES

1. Did the testimony of a police officer impermissibly vouch for the credibility of the victim?

2. Did appellant receive ineffective assistance of trial counsel?

## FACTS

Appellant and the victim developed a personal relationship four years before the altercation leading to this appeal. Though the relationship had long failed, continued contact was necessitated by appellant's visitation with the child born of the relationship. On March 22, 1996, appellant arrived at the victim's house in Gillette to take the child for a weekend visitation. Appellant, apparently displeased with the victim's new living arrangements with her current boyfriend, demanded that she return with him to Casper. Her refusal to rekindle their relationship led to an assault in which the victim was hit, shoved and cut with a knife on her hand and face.

Appellant was charged with aggravated assault in violation of W.S. 6–2–502(a)(ii) (1997). The defense maintained appellant was not present in Gillette on the date the victim claimed she was assaulted. On October 7 and 8, 1996, the matter was tried before a jury and the appellant found guilty. He was sentenced to not less than four nor more than eight years in a state penal institution. This appeal timely followed.

## DISCUSSION

### Improper Opinion Testimony

At trial, the State called a Gillette police officer who had been assigned the task of photographing the injuries of the victim the day after the altercation. During the prosecutor's redirect examination, immediately following cross-examination, the following exchange occurred:

[Prosecutor]: So I'm clear, Officer, what was your role in this investigation? What was your assigned task?

[Officer]: I was to take photographs of injuries that [the victim] had sustained in an altercation with Patrick Dudley.

Relying solely on our decision in *Whiteplume v. State*, 841 P.2d 1332 (Wyo.1992), appellant claims that this testimony constitutes error per se, mandating reversal because it con-

veyed the opinion of the officer that appellant was guilty.

██ We begin by addressing appellant's proposed standard of review. In *Stephens v. State*, 774 P.2d 60, 68 (Wyo.1989), we held that "testimony offering an opinion as to the guilt of the defendant, when elicited by a prosecuting attorney, should be perceived as error per se." The import of proclaiming an event as error per se is articulated in *Stephens* as follows:

Even though error is found, it still is necessary, in most instances, to determine whether the error was prejudicial. Unless the situation reaches the level of error per se, or is perceived to be constitutional error, error is prejudicial only if the defendant can establish a reasonable probability that, in the absence of the error, the verdict might have been more favorable.

*Id.* at 67 (citation omitted). Testimony elicited by a prosecutor which offers an opinion as to the defendant's guilt must be presumed prejudicial rather than treated as a question of plain error because it is impossible to determine whether the jury may have relied on the opinion in reaching its verdict. *Id.* at 68; *Bennett v. State*, 794 P.2d 879, 881 (Wyo. 1990); *Whiteplume*, 841 P.2d at 1338.

However, we do not find the *Stephens/Bennett* standard applicable in this case. In *Stephens,* three expert witnesses were asked, based on their training and experience, their opinion whether or not the child victim had been sexually molested and, if so, by whom. All answered the first question affirmatively, and all three identified the defendant as the molester. *Stephens,* 774 P.2d at 64–66. In *Bennett,* the prosecutor directly asked a police officer's opinion as to whether the defendant was a drug dealer and solicited the facts from his investigation that formed the basis for his opinion. The officer testified that the defendant was, in his opinion, a drug dealer based on the evidence before the jury. *Bennett,* 794 P.2d at 882–83; *see also Curl v. State,* 898 P.2d 369, 373 (Wyo.1995) (prosecutor's question asking opinion as to guilt of defendant would have been reversible error but for the beneficent interruption by the witness, not to express her opinion as to defendant's actions but to clarify her notes).

In *Whiteplume,* however, we did not analyze the alleged error as error per se. There, the only issue at trial was whether the victim was raped or whether the sexual encounter was consensual. 841 P.2d at 1338. The prosecutor did not ask for an opinion from the witness, but merely asked what he did next in his investigation. The deputy sheriff replied, "I listened to her story and made a determination that she had been raped." *Id.* Absent the direct solicitation by the prosecutor of the erroneous testimony and an express opinion as to the guilt of the defendant, we found that the effect of the testimony must be determined against "the factual backdrop" of the case using "the most careful exercise of delicate judicial judgment." *Id.* at 1340–41. Thus, automatic reversal was not required, even though we recognized that the statement of the deputy sheriff inferred his belief in the victim's version of events. *Id.* at 1340.

■■■ It is clear that a request for an opinion as to the guilt of the defendant was not made in the present case; and therefore, error per se will not attach. Since no objection to the challenged testimony was made at trial, we must determine appellant's claim under our plain error standard. *Curl,* 898 P.2d at 374; *Warhawk v. State,* 849 P.2d 1326, 1327 (Wyo.1993). Appellant must therefore demonstrate the presence of the following three elements:

First, the record must be clear as to the incident which is alleged error. Second, the party claiming that the error amounted to plain error must demonstrate that a clear and unequivocal rule of law was violated. Finally, the party must prove that a substantial right has been denied him and as a result he has been materially prejudiced.

*Warhawk,* 849 P.2d at 1327 (quoting *Bradley v. State,* 635 P.2d 1161, 1164 (Wyo.1981)).

The officer's statement is clear upon the record, satisfying the first element. In *Whiteplume,* we found error in the admission of testimony which infers a belief or an opinion "with respect to the victim's version of the events surrounding the assault." 841 P.2d at 1340. Assuming, arguendo, that the officer's statement in this case infers a belief or opin-

ion, we find that the testimony did not materially prejudice the appellant. Numerous factors are present which distinguish the facts of this case from those found in *Whiteplume.* A clear understanding of our holding requires a more complete recitation of the context of the officer's testimony.

On direct examination, the officer testified that he was assigned to take pictures of injuries the victim had received in "an earlier altercation." When asked about his observation of her emotional demeanor, the officer stated:

In speaking with her, she appeared to be upset as a result of whatever happened the night before. It was hard for her to give me specific detail about what had happened. And especially when I questioned about her, about the nature of how she sustained those injuries.

The record is clear, however, that the bulk of the officer's testimony was to provide foundation for the admission of six photographs of the victim's injuries.

On cross-examination, the officer again testified as to the content of the photographs. At the end of the cross-examination, when asked about his testimony regarding her demeanor, the following interchange took place:

[Defense counsel]: Did she cry?

[Officer]: I don't believe she ever fully broke down and began weeping, but she was still clearly upset.

[Defense Counsel]: And I take it from your testimony that it was difficult for you to get specific information from her?

[Officer]: The information that I was looking to get was just with regard to the request of the photographs. I had asked her basic questions, what had happened, how did she come about getting injured, things like. And it was hard for her to go back to—it appeared to be hard to go back to the events that lead up to her injuries.

The witness was then tendered for redirect, at which time he testified:

[Prosecutor]: So I'm clear, Officer, what was your role in this investigation? What was your assigned task?

[Officer]: I was to take photographs of injuries that [the victim] had sustained in an altercation with Patrick Dudley.

[Prosecutor]: Your's was not an investigative role; it was an evidence collection role. Is that a fair statement?

[Officer]: Yes, that's correct.

[Prosecutor]: So, you weren't looking for a blow-by-blow of the events that occurred to her, were you?

[Officer]: That's correct. The questions that I asked with regard to her injuries were to somewhat give me an idea of how the injuries occurred, where they occurred, in relationship to her physical body so I could better take photographs of what accurately she sustained in that altercation.

The remainder of the redirect examination established that this officer was not responsible for investigation, but that two other officers performed those duties.

Our holding hinges on finding a reasonable possibility that, had the jury not heard the officer's statement, the verdict would have been different. We initially note that the statement made by the officer in this case did not include his determination that a crime was committed or a direct opinion or personal belief as to the guilt of the defendant or the veracity of the victim. Unlike the witness in *Whiteplume*, the officer never stated he had "determined" anything. The officer's testimony primarily consisted of his personal observations as compared to the photographs which were then admitted as evidence. Further, the officer played no role in the investigation, and repeatedly testified that his limited role required only a minimal interview of the witness.

A second distinguishing feature from *Whiteplume* is the jury's perception of the qualifications of the testifying officer. In *Whiteplume*, the officer testified that he was the investigating officer with 15 years of experience, had 1,500 hours of training, and investigated about 70 rapes. His education consisted of a bachelor's degree in psychology and a master's degree. *Whiteplume*, 841 P.2d at 1339. The officer in this case is a city patrol officer with 3½ years of experience. The officer attended a little over one year of community college and was not part of the

investigation, but was called in specifically to take photographs for the officers conducting the investigation. While we recognize that impropriety within the trial process cannot be measured by the qualifications or intentions of the person testifying, we reiterate that the "issue presented in the light of the factual backdrop of [the] case is a close one that truly calls upon the most careful exercise of delicate judicial judgment." *Whiteplume*, at 1340–41.

In *Whiteplume* we stated that "[i]n measuring the quantum of harm caused by the error, we consider the strength of the prosecution's case against the accused." 841 P.2d at 1340. We then pointed out that no physical evidence supported the guilt of the accused and that a close factual dispute existed which brought credibility to the center of the controversy, i.e., whether the sexual encounter was consensual or an unwarranted assault. *Id.* By contrast, in this case the victim visually displayed physical injuries consistent with her testimony. The defendant's alibi defense was tenuous at best. Moreover, the historical relationship of the victim and appellant was rooted in the appellant's established pattern of abuse toward the victim.

Finally, the officer's brief appearance as the second witness in the State's case, to provide foundation for the introduction of photographs, is in stark contrast to the strategic placement of the witness in *Whiteplume*. There, we recognized the accepted psychological impact of the testimony of witnesses presented first or last under the theory of "primacy and recency." *Id.* Here, the witness was neither first nor last.

■ After careful consideration, we cannot say that our judicial confidence in the verdict is undermined by the officer's single inartful response. We do not believe that the failure to include the word "allegedly" in one sentence alerted the jury to the point that it relied on this statement in reaching its verdict. Neither can we say that, without this statement, there is a reasonable possibility that the verdict might have been more favorable to appellant. Consequently, we are unable to find any material prejudice to the appellant in this instance.

### Ineffective Assistance of Counsel

■ In order to prevail on his claim of ineffective assistance of counsel, appellant must make the dual showings that his counsel's performance was defective and that the deficient performance prejudiced his defense. *Rigler v. State*, 941 P.2d 734, 742 (Wyo.1997); *Marquez v. State*, 941 P.2d 22, 25 (Wyo.1997).

We examine the conduct of defense counsel in light of all the circumstances in determining whether the identified acts or omissions fall outside the ambit of professionally competent assistance, bearing in mind the function of counsel is to make the adversarial testing process work in every case. We do not evaluate the efforts of counsel from a perspective of hindsight but, rather, we endeavor to reconstruct the circumstances surrounding counsel's challenged conduct and evaluate the professional efforts from the perspective of counsel at the time. "We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment." *Gist [v. State]*, 737 P.2d [336,] 342 [ (Wyo.1987) ] (citations omitted). The burden is upon the defendant to overcome this presumption that, in light of the circumstances, the challenged action or failure of the attorney might be considered sound trial strategy.

*Johnson v. State*, 936 P.2d 458, 467 (Wyo. 1997) (quoting *Dickeson v. State*, 843 P.2d 606, 609 (Wyo.1992) (some citations omitted)).

■ Appellant claims counsel's failure to file a motion to suppress W.R.E. 404(b) testimony concerning his prior conduct with the victim, and the failure to object to that testimony at trial, constitutes ineffective assistance. However, appellant fails to cite any authority which supports his claim that the evidence was inadmissible and, therefore, fails to show that his counsel's failure to object constituted deficient performance. We have said that "it will be incumbent upon the accused to offer case authority specifically foreclosing admission of the evidence un-der the circumstances of the case. The State then will be free to justify admission of the evidence on any theory of relevancy permitted by Wyo. R. Evid. 404(b)." *Vigil v. State*, 926 P.2d 351, 355 (Wyo.1996). On appeal, the appellant must utilize his opportunity to present an argument which would have been successful had it been presented in the court below. We will not do it for him.

■ In addition, noting defense counsel's vigorous defense at trial, the failure to object to the W.R.E. 404(b) evidence may well have been a trial tactic. The record supports possible reasons why appellant's defense may have been enhanced by the admission of the prior bad acts, including the opportunity to impeach the victim since appellant denied the "prior bad acts" occurred. "[T]actical decisions do not render assistance ineffective simply because in retrospect it is apparent that counsel chose the wrong course." *Baldwin v. Blackburn*, 653 F.2d 942, 946 (5th Cir.1981). We cannot fault counsel's tactical decision to follow the path to impeachment rather than challenging the admission of the evidence. *See, Johnson*, 936 P.2d at 467–68. We find appellant's claims of ineffective assistance of counsel to be without merit.

### CONCLUSION

The record fails to establish a reasonable possibility that, had the jury not heard the officer's description of his assignment, it would have reached a different result. Therefore, appellant failed to show that reversal of his conviction is warranted. Further, appellant's claim of ineffective assistance of counsel based upon counsel's failure to object to prior bad act testimony is unsupported by the record or argument. Appellant's conviction is affirmed in all respects.