**STATE of Alaska, Appellant,**

v.

**Scott P. ROBART, Appellee.**

No. A–7013.

Court of Appeals of Alaska.

Oct. 8, 1999.

Eric A. Johnson, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

Matthew W. Claman, Anchorage, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

Alaska law forbids a person to use the official state seal "for any advertising or commercial purpose"[1] without permission from the Lieutenant Governor. In this case, we hold that this law does not violate freedom of speech and that the State can prosecute a person who manufactures and sells coins that use the state seal without permission.

*Facts and proceedings*

On December 16, 1996, W.G. Paulick, an employee with the State Department of Commerce and Economic Development, wrote Robart and invited him to submit "one or more of your company's products" for consideration for a show featuring consumer products from Alaska on QVC, a home-shopping television channel. On May 24, 1997, Robart appeared on QVC and marketed a gold and silver coin commemorating the anniversary of the 1897 gold rush with the state seal on one side and a trademarked (not by Robart, although he did have permission to use this logo) design for the Gold Rush Centennial on the other side.[2] On May 29, Lieutenant Governor Fran Ulmer wrote a letter to Robart stating that "it has been my policy since taking office that the state seal shall not be used for commercial purposes." Ulmer asked Robart to stop selling the coins because it violated AS 44.09.015. Also, she enclosed a copy of that statute.[3] Robart acknowledged receiving the letter.

Almost two months later, Alaska State Trooper Steve Garrett wrote to Robart, posing as a person interested in buying some of Robart's coins. On August 6, another trooper, Curt Harris, posed as a buyer and bought two of the coins from Robart that bore the state seal on one side. The State then charged Robart with using the seal of the State of Alaska for commercial purposes without permission from the State.

Robart filed a motion to dismiss the case, contending that AS 44.09.015 was unconstitutional and that his conduct in marketing the coins with the official state seal was free speech protected by the First Amendment and by article I, section 5 of the Alaska Constitution. District Court Judge William

---

1. AS 44.09.015.

2. Robart's design added the words "TROY OZ .999 FINE SILVER" onto the state seal. Robart does not argue that adding these words transformed the state seal into an original work of art or into something that is not the state seal.

3. In the letter, Lt. Gov. Ulmer stated that she had "turned down a request last October from another business in Anchorage to use the state seal on a Gold Rush commemorative coin."

H. Fuld dismissed the criminal case because he concluded that the state statute violated Robart's constitutional right to freedom of speech and expression.

### Discussion

*Commercial use of the state seal is not protected speech.*

Alaska Statute 44.09.010 creates the "official seal of the State of Alaska." Alaska Statute 44.09.015 prohibits using that seal for advertising or commercial purposes without permission.[4] Robart's conduct in this case was marketing products bearing the state seal—specifically, commemorative coins or medallions with the state seal on one side and a design for an Alaskan theme on the other side.

On its face, AS 44.09.015 proscribes only commercial speech. We note that several other jurisdictions have enacted laws protecting the official symbols from commercial use, but have apparently not passed on the constitutionality of these laws.[5]

In *San Francisco Arts & Athletics, Inc. v. United States Olympic Committee,*[6] the Supreme Court considered an attack on a federal statute that granted the exclusive right for the commercial use of the word "Olympic" to the United States Olympic Committee. That statute authorized the United States Olympic Committee to preclude the unauthorized use of the word "Olympic" "for the purpose of trade, to induce the sale of any goods or services, or to promote any theatrical exhibition, athletic performance, or competition."[7] The Court noted that Congress had enacted several similar statutes, some of which pro-

vided for civil remedies and some of which provided for criminal penalties.[8]

SFAA argued that the statute violated the First Amendment. The Court held, "Congress' decision to grant the USOC a limited property right in the word 'Olympic' [fell] within the scope of trademark law protections, and thus certainly within constitutional bounds."[9] The Court reasoned that, to the extent the statute restricted the uses of the word "Olympic" "for the purpose of trade [or] to induce the sale of any goods or services," the · statute regulated "commercial speech," which "receives a limited form of First Amendment protection."[10] The Court recognized that the statute would prohibit some non-commercial uses of the word "Olympic."[11] Still, the court rejected SFAA's First Amendment claim: "Even though [the statute's] protection may exceed the traditional rights of a trademark owner in certain circumstances, the application of the Act to this commercial speech is not broader than necessary to protect the legitimate congressional interest and therefore does not violate the First Amendment."[12]

We find the reasoning of the United States Supreme Court persuasive. Alaska Statute 44.09.015 regulates commercial speech only "for any advertising or commercial purpose." Because it does not impact any non-commercial uses of the state seal, the potential restriction of speech is narrower than that of the statute in *San Francisco Arts & Athletics:* The State has a legitimate governmental interest in regulating the commercial use of the state seal. We conclude that the First Amendment does not bar the State's prosecution of Robart for marketing commemora-

---

4. AS 44.09.015 provides:
    (a) A person may not use or make a die or impression of the state seal for any advertising or commercial purpose, unless written permission has first been obtained from the lieutenant governor.
    (b) Violation of this section is a misdemeanor, and upon conviction is punishable by a fine of not more than $500, or by imprisonment for not more than six months, or by both.

5. *See, e.g.,* Cal. Gov't Code § 402; Haw.Rev.Stat. § 5–6; Me.Rev.Stat. Ann. tit. 1, § 204; R.I. Gen. Laws § 11–15–4; S.D. Codified Laws § 1–6–3.1; Tex. Bus. & Com.Code Ann. § 17.08; Wash. Rev. Code Ann. § 43.04.050; 18 U.S.C. § 713.

6. 483 U.S. 522, 107 S.Ct. 2971, 97 L.Ed.2d 427 (1987).

7. 36 U.S.C. § 380.

8. *San Francisco Arts & Athletics, Inc.,* 483 U.S. at 532 n. 8, 107 S.Ct. 2971.

9. *Id.* at 534–35, 107 S.Ct. 2971.

10. *Id.* at 535, 107 S.Ct. 2971

11. *Id.*

12. *Id* at 540, 107 S.Ct. 2971.

tive coins bearing the official state seal, a commercial activity, because Robart used the state seal without permission.

Robart also relies on article I, section 5 of the Alaska Constitution. ("Every person may freely speak, write, and publish on all subjects, being responsible for the abuse of that right.") Our supreme court has held that the protection provided by this section is "at least as broad as that of the First Amendment of the United States Constitution." [13] However, Robart has not convinced us that this provision of the Alaska Constitution provides broader protection for commercial speech than the First Amendment.

*Conclusion*

We REVERSE the district court's order dismissing the case and REMAND for further proceedings.

---

**13.** *Vogler v. Miller,* 651 P.2d 1, 3 (Alaska 1982) (citations omitted).