**John F. VANVORST a/k/a John F. Lumbra, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 98–154.**

Supreme Court of Wyoming.

March 27, 2000.

Representing Appellant: Sylvia Lee Hackl, State Public Defender, and Donna Domonkos, Appellate Counsel, Wyoming Public Defender's Office; Diane Courselle, Director, and Julia Tyson, Student Intern, of the Wyoming Defender Aid Program. Argument by Ms. Tyson.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director, and John N. O'Brien, Student Intern, of the Prosecution Assistance Program. Argument by Mr. O'Brien.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

THOMAS, Justice.

John F. Vanvorst a/k/a John F. Lumbra (Lumbra) presents several issues to be resolved in this case. He contends the evidence was not sufficient to permit the jury to find him guilty of concealment of stolen property in violation of Wyo. Stat. Ann. § 6-3-403(a)(i) (LEXIS 1999) or to justify giving an instruction on the inference to be drawn from possession of recently stolen property. Lumbra also maintains testimony by the arresting officer included improper hearsay testimony consisting of the officer's radio conversations with his dispatcher. Further, Lumbra claims the officer's testimony that he arrested Lumbra because he believed Lumbra was lying to him improperly commented on Lumbra's credibility. Our examination of this record and the pertinent authorities persuades the Court that there was sufficient evidence to sustain Lumbra's conviction; the evidence justified the giving of an instruction on the inference to be drawn from the possession of recently stolen property; the officer's hearsay testimony properly was admitted; and no error occurred when the arresting officer testified that he believed Lumbra had lied to him. The Judgment, Sentence, and Order of Incarceration entered by the trial court are affirmed.

### ISSUES

This statement of the issues is found in the Brief of Appellant:

1. Did the District Court err in allowing the jury to convict John Lumbra of concealment of stolen property where the evidence of his possession of a car stolen as much as a month earlier was not sufficient to support the jury's inference that Mr. Lumbra knew the car was stolen?

2. Did the District Court commit per se reversible error and violate due process when it instructed the jury that it could infer Mr. Lumbra's knowledge that the car was stolen from the fact that he was in possession of the car?

3. Did the District Court abuse its discretion in allowing [the arresting officer] to provide inadmissible hearsay evidence of information he allegedly received from the police dispatch when those hearsay statements did not contain "circumstantial guarantees of trustworthiness?"

4. Did the District Court err in allowing [the arresting officer] to testify to his opinion that Mr. Lumbra had lied to him?

This Statement of the Issues is found in the Brief of Appellee:

I. Did the State present sufficient evidence to permit the jury to convict appellant of concealing property which appellant knew, believed or had reasonable cause to believe was obtained in violation of law, in violation of Wyo. Stat. § 6-3-403?

II. Did the district court properly submit Instruction No. 9 to the jury, instructing the jury that it might draw a permissive inference from appellant's possession of recently stolen property and other evidence that appellant knew the property had been stolen?

III. Did the district court abuse its discretion in allowing [the arresting officer] to testify regarding information he received from the police dispatcher?

IV. Did the district court err in denying a mistrial when [the arresting officer] testified that he handcuffed appellant for safety reasons and because he believed appellant had lied to him?

#### FACTS

On the afternoon of July 16, 1997, a Wyoming State Patrol officer stopped Lumbra for speeding on Highway 287 south of Laramie. When the officer asked Lumbra for his driver's license and registration, Lumbra told the officer that the car, a 1997 red Dodge Intrepid, belonged to his girlfriend. Lumbra began looking around the car and in the trunk for his wallet. He was unable to locate the wallet and told the officer he must have left it at a gas station in Laramie. Although Lumbra did not know the name of the station, he described the location and the attendant working there. A subsequent search in Laramie found no attendant matching this description, and Lumbra's license was never found.

The officer asked Lumbra his name and date of birth. The officer ran a driver's license check in Colorado where Lumbra claimed to have a valid license, but the check revealed no record of a Colorado license. While the officer was reconfirming the information with Lumbra, Lumbra took a driver's license out of the center console and told the officer the license belonged to his girlfriend, the owner of the car. When the officer asked what the name on the license was, Lumbra was unable to provide the correct last name, at which time the officer asked Lumbra to get out of the car and placed him in handcuffs. The officer said he arrested and handcuffed Lumbra for safety because he "believed he was lying" to him.

The officer proceeded to run a VIN number check to determine whether the vehicle was stolen or registered in another state. The search did not reveal any information, and no paperwork existed in the car to prove ownership. Based on the dealer's decal on the back of the car, the officer requested dispatch to contact the Denver-based dealership to determine whether this vehicle was missing from the lot. Based upon the dispatcher's response, the officer assumed the vehicle was stolen. This was later confirmed by the sales manager who determined that a new 1997 Dodge Intrepid was stolen from the dealer's lot between June 20, 1997, and July 16, 1997. The VIN number of the missing vehicle matched the one Lumbra was driving. The officer transported Lumbra to the Albany County Detention Center, and the car was towed to a towing company lot until the owner claimed it.

A jury convicted Lumbra for violating Wyo. Stat. Ann. § 6-3-403(a)(i), and he was sentenced to four to six years in the Wyoming State Penitentiary. The district court entered this judgment and sentence on March 6, 1998. Lumbra timely appeals the

judgment, sentence, and order of incarceration.

## DISCUSSION

*Sufficiency of Evidence*

■ We review sufficiency of evidence claims to determine "whether or not the evidence could reasonably support such a finding by the fact finder." *Broom v. State*, 695 P.2d 640, 642 (Wyo.1985). Our role is to assess

> whether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State.... We will not substitute our judgment for that of the jury when we are applying this rule; our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did.

*Martinez v. State*, 943 P.2d 1178, 1182 (Wyo. 1997) (quoting *Bloomquist v. State*, 914 P.2d 812, 823–24 (Wyo.1996)).

Lumbra was charged with and convicted of violating Wyo. Stat. Ann. § 6–3–403(a)(i) (LEXIS 1999), which prohibits concealment of stolen property. Under the statute, "[a] person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of ... a felony ... if the value of the property is five hundred dollars ($500.00) or more." The State has the burden of proving, beyond a reasonable doubt, that Lumbra (1) bought, received, concealed, or disposed of property (2) which he knew, believed, or had reasonable cause to believe was obtained in violation of law, and (3) that the value of the

property was more than $500. *Capshaw v. State*, 737 P.2d 740, 745 (Wyo.1987).

■ Lumbra maintains the State failed to prove he knew, believed or had reasonable cause to believe he was driving a stolen vehicle. Relying on *Tageant v. State*, 673 P.2d 651, 654 (Wyo.1983), Lumbra argues the State had the burden of proving that he received or concealed the vehicle knowing that it had been *recently* stolen. Writing for a unanimous court in *Tageant*, Justice Cardine explained that

> proof of mere naked possession of recently stolen property not aided by other proof that the accused received it with knowledge that it was stolen, is insufficient to show guilty knowledge. We have aligned ourselves with the majority, holding that although naked possession of stolen property alone is a dominant, powerful, near conclusive circumstance, yet it is not enough by itself to give rise to an inference that the possessor held the requisite guilty knowledge. There must be some other evidence of circumstances surrounding possession of stolen property of sufficient weight and credibility from which, when considered with the fact of unexplained possession of recently stolen property, a reasonable juror could find beyond a reasonable doubt that the accused knew the property was stolen at the time it was received or concealed by him.

*Tageant*, 673 P.2d at 654 (citations omitted).

■ During its deliberations, the jury may consider a variety of surrounding circumstances to determine whether the defendant possessed the requisite guilty knowledge.[1] Possession of recently stolen property coupled with "admissions or contradictory or evasive statements by the accused" is "corroborative of and sufficient to support a finding of guilty knowledge." *Tageant*, 673 P.2d at 655. Lumbra asserts

---

1. While not an exhaustive list, we have enumerated seven factors which, when combined with an unexplained possession of stolen property, are sufficient to support a finding of guilty knowledge: (a) attempts to dispose of the property at an amount considerably below its fair value; (b) an unusual manner of acquisition or dealing with the property; (c) knowledge of the accused beforehand of the location, nature, or value of the property later stolen; (d) prior possession of other stolen property by the accused; (e) the relative length of time between the theft and fact of possession; (f) admissions or contradictory or evasive statements by the accused; and (g) other incriminating evidence and circumstances surrounding the entire incident. *Tageant*, 673 P.2d at 655.

that neither his possession nor any corroborating circumstances reasonably support an inference that he knew he was driving a recently stolen car. We disagree. He lied about his identity, his date of birth, and the validity of his driver's license. Lumbra also told the officer the license he found in the vehicle belonged to his girlfriend, yet proceeded to improperly describe her physical appearance, her name and age, her location, and her ownership of the vehicle. We find this corroborating evidence sufficient to support an inference that Lumbra knew the car was recently stolen.

Lumbra also relies heavily upon factual similarities in *Wayt v. State*, 809 P.2d 802 (Wyo.1991), to defend his position. In *Wayt*, five days after receiving it, the defendant sold a stolen drill bit for $1,400 when the retail price of the new bit was $5,138. When asked where he obtained the bit, Wayt gave an ambiguous answer that he obtained it on a trip to Texas. The majority concluded that neither the sale of the bit for significantly less nor an unresponsive answer as to the bit's origin was sufficient to corroborate the inference of knowledge. *Wayt*, 809 P.2d at 805–806.

■ We find *Wayt* distinguishable from Lumbra's situation. First, when found in possession of the vehicle, Lumbra made several false statements as to the owner, her identity, her location, and his relationship with her. This information is sufficient to support the jury's conclusion that he illegally obtained the vehicle. Second, he concealed the vehicle not less than one day and not more than twenty-six days after it was stolen. Lumbra maintains that because no one, including the dealership where the car was stolen from, was able to specify the exact time of theft, the lapse of time between the theft of the vehicle and his possession negates any rational inference that he knew the car was recently stolen. He claims that if the five days between when the bit was last seen and the sale of the bit was not enough to establish Wayt's guilty knowledge, then the gap in time in his case was insufficient evidence for the jury to determine he possessed a recently stolen vehicle. We reject this claim as well. "[T]he surrounding circumstances of the defendant's unexplained possession of the [vehicle] in the case before us, based only upon the State's evidence at the end of its case-in-chief, tell us that the defendant must have known or been aware that the [vehicle] was stolen." *Russell v. State*, 583 P.2d 690, 697 (Wyo.1978). In *Russell*, we held that possession of the manifold stolen between December 15, 1975, and mid-January 1976, was recent. *Id.* at 697. Lumbra's evasive behavior and numerous lies to the arresting officer provide the necessary corroborating evidence for the jury to determine he had the requisite knowledge that the vehicle was recently stolen.

■ Lumbra's final complaint on the sufficiency of the evidence was that it was circumstantial, thus insufficient. "Guilty knowledge may be established by direct evidence, circumstantial evidence, or by both types of evidence. No distinction is made between direct and circumstantial evidence. The weight to be given such evidence, together with reasonable inferences to be drawn therefrom, is for the jury, as is the question of the existence of guilty knowledge on the part of the accused." *Tageant*, 673 P.2d at 654. The State presented ample evidence for the jury to determine Lumbra possessed a recently stolen vehicle beyond a reasonable doubt.

*Jury Instruction*

■ We traditionally analyze challenges to jury instructions for reversible error and will not reverse "as long as the instructions correctly state the law and the entire set of instructions sufficiently covers the issues which were presented at the trial." *Harris v. State*, 933 P.2d 1114, 1126 (Wyo. 1997). However, where the defendant complains about an instruction he offered, we will review it under a more stringent standard. We review the trial court's use of a defendant's proposed version of an instruction under the invited error standard.

Under the doctrine of invited error, if a party induces action by a court, the party cannot argue error because the court took such action. Invited errors will not normally be grounds for reversal unless they

go beyond a pertinent reply or are necessarily prejudicial.

*Engle v. State,* 821 P.2d 1285, 1287 (Wyo. 1991) (citations omitted). Lumbra fails to demonstrate how the instructions, which defined "recently" and "inference of knowledge" as he requested, so prejudiced him as to require the court to overlook invited error.

The State originally proposed an instruction that possession of stolen property, if not satisfactorily explained, gave rise to an inference of knowledge that property has been stolen. Lumbra proposed two additional instructions to define the terms "recently" and "inference of knowledge." After the district court added two paragraphs, counsel for Lumbra stated, "I should state for the record that with those additions, we don't have any objection to the jury instructions." This concluded the instruction conference and the following instruction, Instruction Number 9, based on *Wayt v. State,* 809 P.2d 802 (Wyo. 1991), was read to the jury:

Possession of recently stolen property is not of itself sufficient to permit a finding that the Defendant is guilty of the crime charged. However, possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which the Jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen, and, is also a circumstance from which the jury may reasonably draw the inference that the person in possession not only knew it was stolen property, but also participated in some way in the theft of the property.

However, you are never required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits the jury to draw from the possession of stolen property.

Although possession is a strong circumstance tending to show guilt, there must be corroborative evidence tending to prove Defendant's guilt. However, this corroborative evidence need only be slight and may include: Whether the Defendant had the opportunity to commit the crime charged, his conduct, his false or contradicting statements, if any, or other statements he may have made with reference to the property and any other evidence which tends to connect him with the crime.

If you find beyond a reasonable doubt from the evidence that the property was stolen, and that, while recently stolen, the property was in the possession of the Defendant, you may, from those facts, draw the inference that the property was possessed by the Defendant with knowledge that it was stolen unless such possession by the Defendant is explained to the satisfaction of the Jury by other facts and circumstances in evidence of the case.

In considering whether possession of recently stolen property has been satisfactorily explained, you are reminded that in the exercise of constitutional rights the accused need not take the witness stand and testify.

Possession may be satisfactorily explained through other circumstances, other evidence, independent of any testimony of the accused.

Instruction Number 9A stated:

The term "recently" is a relative term, and has no fixed meaning. Whether property may be considered as recently stolen depends upon the nature of the property, and all the facts and circumstances shown by the evidence in the case. The longer the period of time since the theft the more doubtful becomes the inference which may reasonably be drawn from unexplained possession.

Lumbra distinguishes his situation from *Barnes v. United States,* 412 U.S. 837, 840 n. 3, 93 S.Ct. 2357, 2360, 37 L.Ed.2d 380 (1973), arguing that there can only be a weak inference of his "knowledge" because of the long period of time since the theft as well as little corroborative evidence and facts of insufficient weight and credibility. A closer review of *Barnes* reveals evidence no stronger than that in the case before us. Barnes possessed

stolen checks, lied to the postal inspector about his possession of the checks, and then endorsed the names of the payees on two of the checks. Here, Lumbra offered a false name, invalid driver's license, and the false identity of his girlfriend who supposedly owned the car. Under the standard enunciated in *Barnes*, we find sufficient evidence to instruct the jury and allow it to infer that Lumbra possessed the requisite guilty knowledge.

■ Lumbra further contends the instruction confused and misled the jury as to its burden of proving both possession and the corroborative facts. Relying on *Russell*, 583 P.2d at 698, Lumbra claims that "naked possession of stolen property alone [does not] establish[ ] a prima facie case. It is a dominant, powerful, near-conclusive circumstance but needs some other incriminating 'surrounding circumstances' to bring it into play." Lumbra maintains that the jury was not properly instructed as to its responsibility to find "corroborative evidence." However, we find the fourth paragraph in Instruction 9 to be substantially identical to the instruction approved in *Barnes*, which we adopted in *Russell*, 583 P.2d at 697, and cases thereafter. Moreover, jury instructions are to be reviewed in their entirety and read together. *Ostrowski v. State*, 665 P.2d 471, 487 (Wyo.1983). Since we do not single out or consider instructions independently, considering the instructions as a whole, the jury was well informed about its duty to find "corroborative evidence."

Although he is in a feeble position to complain, Lumbra also challenges the instruction as a due process violation because it permitted the jury to infer the element of guilty knowledge without the State proving that knowledge beyond a reasonable doubt. *Brooks v. State*, 706 P.2d 664, 668 (Wyo. 1985). He relies heavily upon a nearly identical instruction in *Barnes*, 412 U.S. at 840 n. 3, 93 S.Ct. 2357, to analyze the due process implications of the instruction. The Supreme Court determined that although due process was not violated, "the evidence necessary to invoke the inference [must be] sufficient for a rational juror to find the inferred fact beyond a reasonable doubt." *Barnes*, 412 U.S. at 843, 93 S.Ct. at 2362.

■ We agree with Lumbra that a jury instruction cannot shift the burden to the accused to disprove an element of the crime. We do not, however, find *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), controlling in this situation as Lumbra argues. *Sandstrom* is distinguishable because it involved a mandatory inference instruction, where the jury was told that it must find, based on the fact that Sandstrom voluntarily stabbed the victim, that he intended to kill her. In contrast, the instruction at issue instructs the jury that it **may** draw the inference that Lumbra knew he was driving a stolen vehicle. "The inference encompassed by this instruction was one that a reasonable juror would conclude to be permissive in the context of the instructions as a whole." *Harley v. State*, 737 P.2d 750, 755 (Wyo.1987).

While the language of the instruction is stated in permissive rather than mandatory terms, Lumbra maintains it allowed the jury to convict him upon proof of his concealment of the car "and of additional facts not themselves establishing the element of" knowledge. He asserts that this instruction shifts the burden of proof to him to explain possession. Lumbra confuses the burden of production with the burden of persuasion, or proof. The burden of proof, as announced in *Sandstrom*, and the burden of production or going forward with evidence, as in *Barnes*, are not interchangeable. "If the provisions of Rule 303(c), W.R.E.,[2] are complied with in giving a jury an instruction with respect to

---

2. W.R.E. 303(c) states:

Whenever the existence of a presumed fact against the accused is submitted to the jury, the court shall instruct the jury that it may regard the basic facts as sufficient evidence of the presumed fact but is not required to do so.

In addition, if the presumed fact establishes guilt or is an element of the offense or negatives a defense, the court shall instruct the jury that its existence, on all the evidence, must be proved beyond a reasonable doubt.

an inference, the constitutional problem of relieving the state of its burden of proof or shifting that burden to the defendant is avoided." *Harley*, 737 P.2d at 755. Shifting of the burden of production, as the instruction did in this case, does not violate due process.

■ Lumbra's final attack on the instruction is that it infringed upon his fundamental right not to testify or present any evidence whatsoever at trial. U.S. Const. amend. V; Wyo. Const. Art. 1 § 11. He maintains this instruction, in effect, requires him to testify or present exculpatory evidence to disprove his guilt. The basis of his argument is "that the jury may infer the defendant's guilt unless they are convinced otherwise by evidence explaining the defendant's possession of stolen property." Lumbra complains the reminder to the jury that "[p]ossession may be satisfactorily explained through other circumstances, other evidence, independent of any testimony of the accused," does little to cure the first part of the instruction. This argument has been rejected outright in *Barnes*, where the Supreme Court stated:

> Petitioner also argues that the permissive inference in question infringes his privilege against self-incrimination. The Court has twice rejected this argument. *Turner v. United States*, [396 U.S. 398, 417–18, 90 S.Ct. 642, 652, 24 L.Ed.2d 610 (1970)]; *Yee Hem v. United States*, 268 U.S. 178, 185, 45 S.Ct. 470, 472, 69 L.Ed. 904 (1925), and we find no reason to re-examine the issue at length. The trial court specifically instructed the jury that petitioner had a constitutional right not to take the witness stand and that possession could be satisfactorily explained by evidence independent of petitioner's testimony. Introduction of any evidence, direct or circumstantial, tending to implicate the defendant in the alleged crime increases the pressure on him to testify. The mere massing of evidence against a defendant cannot be regarded as a violation of his privilege against self-incrimination. *Yee*

*Hem v. United States, supra,* 268 U.S., at 185, 45 S.Ct., at 472.

*Barnes*, 412 U.S. at 846–47, 93 S.Ct. at 2363 (footnotes omitted). We quoted this language with approval in *Russell*, 583 P.2d at 696.

While we hold true the privilege against self-incrimination we adopted many years ago, we find implausible Lumbra's argument that the only way to thwart the jury's inference of knowledge would be to testify or present exculpatory evidence. Under this theory, if a defendant chose not to testify, the State would be precluded from using testimony from a victim or any valid inferences drawn from that testimony. As a result, prosecution of criminal cases would be nearly impossible. So long as the State "introduces evidence on its case-in-chief from which the jury may properly infer the essential elements of the crime, the State has then made out a 'prima facie case'" which clearly satisfies the reasonable doubt standard. *Russell*, 583 P.2d at 695. It is the defendant's option whether to testify but the State may present evidence and use inferences drawn from that evidence without violating his constitutional rights.

*Hearsay*

■ Lumbra maintains the district court further abused its discretion by allowing the arresting officer to testify regarding information he learned from the police dispatcher. Decisions regarding the admission or exclusion of evidence are within the sound discretion of the trial court. *Humphrey v. State*, 962 P.2d 866, 870 (Wyo.1998) (citing *Rigler v. State*, 941 P.2d 734, 737 (Wyo. 1997)). Evidentiary rulings, thus, remain undisturbed unless the appellant demonstrates the court abused its discretion and acted in a manner which exceeded the bounds of reason under the circumstances. *Burgos–Seberos v. State*, 969 P.2d 1131 (Wyo.1998).

■ The testimony Lumbra challenges is the highway patrolman's discussion with the police dispatcher in reference to the validity of Lumbra's Colorado driver's license:

Prosecutor: Did you attempt to verify [Lumbra's date of birth]?

Officer: Yes, I did.

Prosecutor: How?

Officer: I went back and did a driver's license check to Colorado.

Prosecutor: Okay. These are done per every stop? Or tell us how you do a driver's license check.

Officer: Just about every stop, check to see if somebody has a valid driver's license, I'll call into our dispatch, and I'll give them the first name, the last name and the middle initial along with the date of birth, and if somebody has a driver's license, it will come up just with that information.

Prosecutor: Okay. What came up?

Defense: I object to this answer, Your Honor. That's going to be hearsay.

* * *

Court: Overruled.

Prosecutor: What did he come back and tell you?

Officer: They told me that they could not find a driver's license for that name and date of birth out of Colorado.

Prosecutor: All right. Now, did you attempt to make—to verify this story about the wallet? Did you attempt to—I think you stated you had called dispatch on that. Or maybe you hadn't told me that.

Officer: I radioed to dispatch, and I asked them to call that station that I assumed it was and see if they, one, found a wallet; two, if they had a heavy set blonde male clerk that was working there; and three, if they remembered a red Dodge Intrepid.

Prosecutor: Okay. Were you able to verify any of the Defendant's story?

Defense: Your Honor, at this particular point again I'll raise an objection. That is hearsay.

* * *

* * *

Court: Well, I think it is probably proper as far as it goes to show why the officer did what he did. Do you want a limiting instruction on that?

Defense: Yes, I do.

* * *

Court: Ladies and gentlemen, the Court is going to allow the officer to testify with respect to information he received from the dispatch center, but you're advised that that information is to be considered by you only as evidence relating to the officer's motivations and actions in this matter. It is not evidence of the truth of those assertions.... It is simply to be considered by you in determining—or in laying out the officer's motivations for his actions in this matter. All right?

* * *

Prosecutor: Did you make any attempt to verify this story about the wallet?

Officer: Yes, I did.

Prosecutor: What did you do?

Officer: I—I thought we already covered this. I had her call the gas station.

Prosecutor: I wanted to go back and find out who, in fact, you discussed this with. You talked over at dispatch. Who had they talked to?

Officer: At first they called the gas station that I had said that I thought it was.

Defense: Well, I'm going to object to whatever dispatch did, because he wasn't even privy to that conversation.

 Lumbra maintains that under *Tennant v. State*, 786 P.2d 339 (Wyo.1990), the dispatcher's statements to the officer were inadmissible hearsay because they were untrustworthy: no evidence corroborated how the license check was done, whether the dispatcher actually called the gas stations, and whether the report back to the officer was actually accurate. As the State aptly points out, the district court limited the purpose for which the jury could use the officer's testimo-

ny; it could only be used "to show why the officer did what he did" and not for the truth of the assertions, which would make the testimony inadmissible hearsay. Such testimony is not considered hearsay because it shows why the action was taken by the officer, not that the statement is true. *Olson v. State*, 698 P.2d 107, 114 (Wyo.1985). In addition, "[a] police officer is permitted to say he had the necessary information concerning possible criminal activity providing the statements are simply background information indicating that a police officer did not act without reason." *Id.* at 114 (citing *United States v. Vitale*, 596 F.2d 688 (5th Cir.1979)). The arresting officer was doing exactly this during his testimony about his investigation concerning Lumbra's driver's license.

Even if admissible for a limited purpose, Lumbra asserts the district court improperly allowed the State, in its summation, to argue the truth of this evidence. A review of the prosecutor's summation consisted of the officer's observations at the scene and statements Lumbra made at the scene, neither of which referred to the conversation the officer had with dispatch. We do not find the district court to have acted in a manner which exceeded the bounds of reason under the circumstances; thus we find no abuse of discretion, and the officer's statements were properly admitted into evidence.

*Opinion Testimony*

■ Lumbra's final argument is that the district court erred in allowing the jury to consider the arresting officer's statement that in his opinion he believed Lumbra was lying to him. During the trial when the officer recounted the events surrounding Lumbra's arrest, the officer testified:

| Officer: | I asked [Lumbra] if he would step out of the car, which he did, and then I told him to turn around and put his hands behind his back, and I placed him in handcuffs. |
| Prosecutor: | And the purpose of that was? |
| Officer: | For my safety. |
| Prosecutor: | Okay. Why? |

| Officer: | Because at that time I believed he was lying to me. |

\* \* \*

| Defense: | Your Honor, may we approach the bench. |

\* \* \*

| Defense: | Your Honor, at this particular point I would like to interpose an objection to the last answer the police officer gave, that he was—the police officer made a statement that he believed that the Defendant was, in fact, lying. |

\* \* \*

| Court: | Ladies and gentlemen, for the record, [the officer], in response to a question a second ago concerning officer's safety and why he handcuffed the Defendant, made a statement to the effect that he believed the Defendant was lying. You're instructed to disregard that remark. This is not to be considered by you as evidence or in your deliberations in this matter. |

■ According to Lumbra, the officer's opinion about Lumbra's veracity provided a critical piece to the State's case on the knowledge element of the crime. Without this, Lumbra argues, the State would not have had the requisite corroborating circumstances to support an inference of knowledge. "Testimony elicited by a prosecutor which offers an opinion as to the defendant's guilt must be presumed prejudicial rather than treated as a question of plain error because it is impossible to determine whether the jury may have relied on the opinion in reaching its verdict." *Dudley v. State*, 951 P.2d 1176, 1178 (Wyo.1998). Thus, Lumbra contends it was error per se to allow in such testimony.

Lumbra claims his situation is analogous to three cases in which we reversed convictions based upon opinion testimony which resulted in error per se. In *Stephens v. State*, 774 P.2d 60, 64–66 (Wyo.1989), child sexual abuse experts opined about the defendant's guilt. In *Bennett v. State*, 794 P.2d 879, 882–83 (Wyo.1990), the investigating officer recounted the factual basis for his opinion that de-

fendant was a drug dealer, including prior uncharged drug transactions. In *Whiteplume v. State,* 841 P.2d 1332, 1337 (Wyo. 1992), the sheriff's deputy investigating the scene stated, "I listened to her story and made a determination that she had been raped." Lumbra maintains the officer's testimony that he was "lying" amounts to an opinion of guilt and is error per se.

We find these cases inapplicable to Lumbra's situation. First, in *Whiteplume,* we did not analyze the alleged error as error per se because the prosecutor only asked the witness what he did next in his investigation. "Absent the direct solicitation by the prosecutor of the erroneous testimony and an express opinion as to the guilt of the defendant, we found that the effect of the testimony must be determined against 'the factual backdrop' of the case using 'the most careful exercise of the delicate judicial judgment.'" *Dudley,* 951 P.2d at 1179 (citing *Whiteplume,* 841 P.2d at 1340–41). Second, as in *Dudley,* the prosecutor here did not ask the officer's opinion of Lumbra's guilt; rather, the officer offered an unsolicited personal observation. *Dudley,* 951 P.2d at 1180. It is not error per se where the prosecutor's question does not request an opinion as to the guilt of the defendant. *Id.* at 1179. The district court correctly observed that the officer's statement did not go directly to the defendant's credibility at the point it was raised, nor was it an opinion of guilt. Instead, it explained the officer's actions.

Because we find the comment was not error per se, we review the statement for prejudicial error. We distinguished our review of error per se from review of other types of error in *Stephens,* 774 P.2d at 67 (citations omitted):

> Even though error is found, it still is necessary, in most instances, to determine whether the error was prejudicial. Unless the situation reaches the level of error per se, or is perceived to be constitutional error, error is prejudicial only if the defendant can establish a reasonable possibility that, in the absence of the error, the verdict might have been more favorable.

 Even if it was error for the officer to make the comment, the evidence against Lumbra was overwhelming; thus the jury's determination did not hinge solely upon the officer's testimony. He was not materially prejudiced by the officer's comments because we cannot say that, "without this statement, there is a reasonable possibility that the verdict might been more favorable to [Lumbra]." *Dudley,* 951 P.2d at 1180. Moreover, the district court cured any alleged error based on the jury's possible misconception when it instructed the jury to disregard the remark.

## CONCLUSION

Lumbra's situation involves a combination of factors which led to his conviction: he lied about his identity, the loss of his wallet, how he came to possess the vehicle, the owner of the vehicle and his relationship with her. Further investigation revealed Lumbra did not have a valid driver's license and the car was stolen. We are satisfied the State met its burden by demonstrating, through corroborating evidence, that Lumbra knew the vehicle he was driving was recently stolen. We also reject that the officer's remark was error per se. Therefore, we affirm Lumbra's conviction in every respect.